IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTHUR SCOTT[1] and EDWIN ORTIZ, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| NEW YORK CITY POLICE | ) |
| OFFICER OSCAR SANDINO, | ) |
| CITY OF NEW YORK, | ) |
| and other as-yet-unidentified officers of the | ) |
| New York Police Department, | ) |
| | ) |
| Defendants. | )  JURY TRIAL DEMANDED |

# COMPLAINT

Plaintiffs ARTHUR SCOTT and EDWIN ORTIZ, by their attorneys, Loevy & Loevy, complains of Defendants New York City Police Officer Oscar Sandino; City of New York; and Unknown Officers (collectively, "Defendant Officers"); as follows:

## INTRODUCTION

1. For thirteen years, New York City Police Department ("NYPD") employed Defendant Oscar Sandino, who used his power to engage in massive corruption, and destroy the lives of innocent people.

2. During his years on the force, Defendant Sandino conspired with the other Defendant Officers to violate the rights of innocent people and frame them for crimes they did not commit by fabricating and concealing evidence.

---

[1] Arthur Scott is a transgender woman and uses the pronouns she/her/hers. Accordingly, Plaintiff Scott will be referred to by her proper pronouns throughout this Complaint.

3. In particular, Defendant Sandino has framed half a dozen other innocent people in the last two decades as a result of the policies and practices of the New York Police Department as described below.

4. The innocent people arrested by Defendant Officers tried to ring the alarm bells to alert the NYPD of Defendant Officers' misconduct, but their voices were silenced, and their stories of injustice ignored.

5. Finally, in 2010, Defendant Sandino was federally indicted on three counts of violating the civil rights of three women due to his repeated acts of sexual misconduct in 2006, 2008, and 2009. Defendant Sandino was suspended from the NYPD.

6. Because Defendant Sandino knew his lies had caught up to him, he pled guilty to the federal charges of sexual misconduct.

7. Defendant Sandino was sentenced to two years in prison.

8. In November 2021, Queens District Attorney Melinda Katz sought to repair the widespread harm Defendant Sandino had wrought and requested that six cases in which Defendant Sandino was the essential witness be vacated because Defendant Sandino's "serious misconduct" compromised the cases.

9. District Attorney Katz said, "We cannot stand behind a criminal conviction where the essential law enforcement witness has been convicted of crimes which irreparably impair their credibility. Vacating and dismissing these cases is both constitutionally required and necessary to ensure public confidence in our justice system."

10. Plaintiffs brings this action to obtain justice and redress the devastating injuries that Defendant Sandino has caused them.

## JURISDICTION AND VENUE

11. This action is brought pursuant to 42 U.S.C. § 1983 to redress Defendants' deprivation of Plaintiffs' rights secured by the U.S. Constitution.

12. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367.

13. Venue is proper under 28 U.S.C. § 1391(b). Plaintiffs either currently reside in this judicial district or did at the time giving rise to the events and omissions in this lawsuit, the majority of the Defendants reside in this judicial district, and the events and omissions giving rise to Plaintiffs' claims occurred within this judicial district.

## PARTIES

14. Plaintiff, Arthur Scott, is a resident of Manhattan, New York, who was wrongfully detained, prosecuted, and convicted for a crime she did not commit.

15. Plaintiff, Edwin Ortiz, is a resident of Ridgewood, New York, who was wrongfully detained, prosecuted, and convicted for a crime he did not commit.

16. At all times relevant hereto, Defendant Sandino and other unknown law enforcement officers (collectively, "Defendant Officers") were police officers in the New York Police Department ("NYPD") acting under color of law and within the scope of their employment for the City of New York. They are entitled to indemnification under N.Y. Gen. Mun. Law § 50-k and by contract. The supervisory defendants facilitated, condoned and approved the constitutional violations committed by their subordinates.

17. Defendant City of New York is a New York State municipal corporation and is and/or was the employer of each of the Defendant Officers. The City of New York is liable for the acts of the Defendant Officers, which were undertaken within the scope of their employment for the City.

3

### Defendant Sandino's Pattern of Misconduct

18. Defendant Sandino has a history of engaging in precisely the kind of police misconduct that occurred in Plaintiffs' case, including fabricating evidence and concealing evidence in the course of maliciously prosecuting innocent persons.

19. In addition to the case in which Plaintiffs have been exonerated, upon information and belief, many other identified cases in which Sandino engaged in serious investigative misconduct.

20. Given this history of misconduct and the City of New York's failure to meaningfully discipline Sandino and others, it is apparent that Sandino engaged in such misconduct because he had every reason to believe that the City of New York and its police department condoned his behavior.

21. As of the filing of this complaint, four other individuals have had their convictions thrown out as a result of Defendants' misconduct. As the investigation into Defendant Sandino's misconduct continues, on information and belief, more exonerations are expected.

22. Defendant Sandino was charged criminally in connection with his sexual misconduct and has pled guilty to the federal charges. He was sentenced to two years in prison.

### New York City's Responsibility

23. As set forth below, the City of New York failed to meaningfully discipline its police officers, including Defendant Sandino and others, for their misconduct. Defendant Officers engaged in the misconduct set forth in this Complaint because they knew that the City of New York and its Police Department tolerated and condoned such conduct.

24. The New York Police Department is responsible, by virtue of its official policies, for scores of miscarriages of justice like that inflicted upon Plaintiffs.

25. Specifically, hundreds of other cases have come to light in which New York police officers fabricated false evidence and/or suppressed exculpatory evidence in order to cause the arrests and subsequent convictions of innocent persons for serious crimes that they did not commit. This number does not even take into account the scores of false arrests that did not result in conviction.

26. For example, in October 1997, Chad Breland was wrongfully convicted of the burglary and robbery of Freddie Balston in Queens, New York. Breland was initially connected to the robbery primarily due to the false statement of a confidential informant. The confidential informant falsely told his handler, a NYPD detective, that Breland was involved in the Balston burglary and robbery. Breland was charged, prosecuted, and wrongfully convicted of the crimes. After being wrongfully convicted, Breland continued fighting to prove his innocence, including petitioning the Conviction Integrity Unit ("CIU") of the Queens County District Attorney's Office to reinvestigate his case. Breland and CIU's post-conviction investigation revealed that NYPD officers had suppressed from the prosecutor and the defense exculpatory evidence. In 2021, Queens County Supreme Court vacated Breland's conviction and dismissed the indictment.

27. In 2006, Shuaib O'Neill was arrested in Queens, New York, and falsely charged with criminal possession of a weapon in the second degree and criminal possession of marijuana in the fifth degree. In 2010, O'Neill was wrongfully convicted of both charges. After his wrongful conviction, O'Neill filed an appeal. The appellate court reviewed the case and found

5

that the evidence, or lack thereof, "cast doubt on the arresting officers' credibility". In 2016, O'Neill's conviction was vacated and the indictment against him dismissed.

28.     In 2007, David Henry was arrested in Queens, New York, after lawfully entering a store. Once Henry was in the store, NYPD officers, including Defendant Sandino, seized and searched Henry without probable cause, and intentionally humiliated him by subjecting him to an unconstitutional strip search. No contraband was found on Henry. NYPD officers did not disclose to anyone that they targeted Henry and covered up the fact that they violated Henry's civil rights. In 2009, Henry sued the New York City and certain NYPD officers for violating his constitutional rights and in 2011, the case settled against the civil defendants. In 2007, Darious Peterson was arrested in Queens, New York after his car was struck by a vehicle driven by NYPD police officers. During the arrest NYPD officers physically abused Peterson, causing him to break his ribs, lose consciousness, and become hospitalized. In response, NYPD officers falsely charged Peterson with 12 different crimes, but the grand jury heard Peterson's testimony and refused to indict him on any of the 12 charges. In 2008, Peterson sued New York City and certain NYPD officers for his injuries, and for falsely charging and prosecuting him. In 2009, Peterson settled his case against the civil defendants.

29.     In 2007, Kaleek Cross was walking down the street and was wrongfully arrested in Queens, New York. Pursuant to his arrest, NYPD officers falsely charged Cross with multiple criminal possession of weapons charges. The officers created and provided false reports to support the false charges. Cross was prosecuted for these crimes and in 2008 was acquitted of all charges. In 2008, Cross sued New York City and certain NYPD officers for their unconstitutional conduct, and in 2009 the case was settled against the civil defendants.

30. In 2011, Dejuan Battle was wrongfully convicted of criminal possession of a weapon in the second degree, based on an arrest that took place in Queens, New York. Battle asserted he was innocent and appealed his case. The appellate court's review found that "objective facts . . . cast doubt upon the officers' credibility." Based on this finding, in 2014, Battle's conviction was vacated and the indictment against him was dismissed.

31. In 2012, Lyla Smith went to the 113th Precinct to learn about a raid that had been conducted at her boyfriend's residence located in Queens, New York. While there, NYPD officers interrogated Smith, threatened her, humiliated her, and then arrested Smith by falsely claiming Smith possessed a controlled substance, drug paraphernalia, and ammunition. The prosecutor, however, dismissed the charges against Smith. In 2012, Smith sued New York City and certain NYPD officers, and in 2013, the case was settled against the civil defendants.

32. At all relevant times, members of the New York Police Department, including the Defendant Officers in this action, routinely manufactured evidence against innocent persons through unconstitutional means and/or suppressed exculpatory evidence relating to their misconduct. This misconduct includes coercing, manipulating, threatening, pressuring, offering inducements to suspects and witnesses to obtain false statements implicating innocent persons, knowing full well that those statements were false, and/or writing reports including materially false statements.

33. Consistent with the municipal policy and practice described in the preceding paragraph, employees of the City of New York, including the named Defendant Officers, fabricated reports, witness identifications, and other evidence, which was used to wrongfully prosecute Plaintiffs.

34. The City of New York and final policymaking officials within the New York Police Department failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Plaintiffs' ongoing injuries.

35. Prior to and during 2007, around the time Plaintiffs were falsely arrested and charged, the City of New York operated a dysfunctional disciplinary system for New York police officers accused of serious misconduct. The New York police disciplinary apparatus almost never imposed significant discipline against police officers accused of violating the civil and constitutional rights of members of the public. The New York police disciplinary apparatus included no mechanism for identifying police officers who were repeatedly accused of engaging in the same type of misconduct.

36. As a result of the City of New York's established practice of not tracking and identifying police officers who are repeatedly accused of the same kinds of serious misconduct, failing to investigate cases in which the police are implicated in a wrongful charge or conviction, and failing to discipline officers accused of serious misconduct within the New York Police Department, officers (including the Defendant Officers here) have come to believe that they may violate the civil rights of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse consequences.

37. As a result of these policies and practices of the City of New York, members of the New York Police Department act with impunity when they violate the constitutional and civil rights of citizens. This includes the Defendant Officers in this case.

38. The City's aforementioned policies and practices caused Plaintiffs' injuries in this case. Defendant Officers, including Defendant Sandino, have a history of engaging in the kind of misconduct that occurred in this case, including the fabrication and concealment of evidence, and the Defendant Officers engaged in such misconduct because they had no reason to fear that the City of New York and its Police Department would ever discipline them for doing so.

39. Examples of Sandino's misconduct include the following: In 2010, Defendant Sandino was arrested and charged via federal indictment in the Eastern District of New York with three counts of violating the civil rights of three women due to sexual misconduct. The indictment alleged that in 2006, Defendant Sandino coerced a female cousin of an arrestee to engage in sex acts with him based on threats he made concerning the lengthy prison sentence faced by the woman's cousin.

40. The indictment further alleged that in 2008, Defendant Sandino arrested a woman and her boyfriend on drug distribution charges following the execution of a search warrant at their apartment. During the arrest, Defendant Sandino forced the woman to undress in front of him in the bedroom of the apartment. Later, at the precinct, Sandino forced the woman to perform oral sex. Upon the victim's release from custody, Defendant Sandino told her that he expected her to have sex with him at a later time. Thereafter, Defendant Sandino called the victim on numerous occasions. The woman subsequently reported Defendant Sandino's misconduct to NYPD's Internal Affairs Bureau, which began an investigation. In March 2008, Sandino was removed from active duty.

41. The indictment also alleged that in 2009, while Defendant Sandino was still under investigation, he engaged in lewd sexual behavior in front of a female arrestee and then forced her to raise her shirt to expose her upper body.

42. The policies and practices described in the foregoing paragraphs were also approved by the City of New York policymakers, who were deliberately indifferent to the violations of constitutional rights described herein.

### The Plaintiffs

43. The plaintiffs in this action were all victim of Defendants' pattern of misconduct.

44. Between 2007 and 2008, Plaintiffs had their constitutional rights violated by Defendant Sandino, pursuant to and consistent with his pattern of misconduct, as described above.

45. Plaintiffs were falsely charged with crimes they did not commit, and Defendant Sandino along with other Defendant Officers committed perjury in pursuit of the false charges, and otherwise conspired to frame Plaintiffs.

46. The criminal charges against Plaintiffs were based upon false evidence that Defendant Officers fabricated, and these Defendant Officers suppressed evidence of their misconduct from the prosecutor and the defense.

47. But for the Defendants' misconduct, Plaintiffs would have never been arrested or prosecuted.

48. Due to Defendants' misconduct, each of the Plaintiffs faced up to a year in jail.

49. Plaintiffs suffered due to their unjust confinement either under criminal charges, conviction for crimes they did not commit, or both, due to the misconduct described in this Complaint.

50. Years after Plaintiffs were arrested and served their wrongful sentences, on November 8, 2021, the Queens District Attorney moved to vacate their convictions and dismiss the charges against them, along with five other cases involving Defendant Sandino. The court granted the request.

51. The vacated convictions, however, are inadequate to repair the damage Plaintiffs have suffered as a result of the Defendants' misconduct. Plaintiffs' injuries have been devastating.

52. Plaintiff Scott suffered physical injuries when she was falsely arrested by Defendants. As a result of Plaintiff Scott's wrongful conviction, she was evicted from her home resulting in years of homelessness, insecurity, and instability.

53. As a result of their wrongful convictions, Plaintiffs were made to feel unsafe in their own city and suffered emotional and psychological pain and suffering.

54. On February 1 and March 4, 2022, Plaintiffs Scott and Ortiz filed their notice of claim, respectively, with the New York Court of Claims setting forth the time, place, and manner in which their claims arose.

55. More than thirty days have elapsed since Plaintiff's notices of claims were served upon Defendant City of New York.

56. The misconduct committed by Defendants was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiffs' clear innocence, and each Defendant is liable for punitive damages, as well as other relief described below.

**Count I – 42 U.S.C. § 1983**
**Due Process – Fabrication**

57. Plaintiffs incorporate each paragraph of this Complaint as if fully stated here.

58. In the manner described more fully above, Defendant Officers, while acting as investigators, individually, jointly, and in conspiracy with each other, deprived Plaintiffs of their constitutional right to due process.

59. In the manner described more fully above, Defendant Officers deliberately withheld exculpatory evidence from Plaintiffs and from state prosecutors, among others, as well

as knowingly fabricated false evidence, thereby misleading and misdirecting the criminal prosecution of Plaintiffs.

60. Defendants' misconduct directly resulted in the detention of Plaintiffs and in the start of and continuation of unjust criminal proceeding against Plaintiffs, denying them of their constitutional right to due process under the Fourteenth Amendment. Absent Defendants' misconduct, the prosecution of Plaintiffs could not and would not have been pursued.

61. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiffs' innocence.

62. The misconduct described in this Count by these Defendants was undertaken pursuant to the policy and practice of the New York Police Department, in the manner more fully described below in Count V.

### Count II – 42 U.S.C. § 1983
### Malicious Prosecution

63. Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

64. In the manner described more fully above, the individual Defendants, individually, jointly, and in conspiracy with one another, and others, as well as under color of law and within the scope of their employment, used false evidence that they had manufactured in order to accuse Plaintiffs of criminal activity and detain, initiate, continue, and perpetuate judicial proceedings, without probable cause.

65. In so doing, these Defendants caused Plaintiffs to be deprived of their liberty and detained and subjected improperly to judicial proceedings without probable cause, in violation of their rights secured by the Fourth and Fourteenth Amendments. These judicial proceedings were instituted and continued maliciously, resulting in injury.

66. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Plaintiffs' clear innocence.

67. As a result of the Defendants' misconduct described in this Count, Plaintiffs suffered loss of liberty, great emotional pain and suffering, and other grievous and continuing injuries and damages.

68. The misconduct described in this Count by these Defendants was undertaken pursuant to the policy and practice of the New York Police Department, in the manner more fully described below in Count V.

### Count III – 42 U.S.C. § 1983
### Conspiracy to Deprive Constitutional Rights

69. Plaintiffs incorporate each paragraph of this complaint as if fully restated here.

70. Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiffs for a crime they did not commit and deprive them of their constitutional rights by maliciously causing Plaintiffs' prosecution, by fabricating evidence that would be used to convict Plaintiffs; and by withholding exculpatory information from Plaintiffs' defense and the prosecution, as described above.

71. In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiffs of these rights.

72. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

73. The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiffs' clear innocence.

74. As a result of Defendants' misconduct described in this count, Plaintiffs suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

75. The misconduct described in this Count by Defendant Officers was undertaken pursuant to the policy and practice of the New York Police Department, in the manner more fully described below in Count V.

### Count IV – 42 U.S.C. § 1983
### Failure to Intervene

76. Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

77. During the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiffs' constitutional rights, even though they had the opportunity to do so.

78. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiffs' innocence.

79. As a result of the Defendants' failure to intervene to prevent the violation of Plaintiffs' constitutional rights, Plaintiffs suffered loss of liberty, great emotional pain and suffering, and other grievous and continuing injuries and damages.

80. The misconduct described in this Count by Defendant Officers was undertaken pursuant to the policy and practice of the New York Police Department, in the manner more fully described below in Count V.

## Count V – 42 U.S.C. § 1983
## Municipal Liability

81. Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

82. As described more fully herein, the City of New York is itself liable for the violation of Plaintiffs' constitutional rights. Plaintiffs' injuries were caused by the policies, practices, and customs of the New York Police Department, in that employees and agents of the New York Police Department, including Defendants in particular, fabricated false evidence implicating criminal defendants in criminal conduct, pursued wrongful convictions through profoundly flawed investigations, and otherwise violated due process in a similar manner to that alleged herein.

83. This institutional desire to close cases through abusive tactics regardless of actual guilt or innocence, to enhance police officers' personal standing in the Department, was known to the command personnel, who themselves participated in the practice.

84. The above-described widespread practices, which were so well-settled as to constitute the de facto policy of the New York Police Department, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it. Furthermore, the above-described widespread practices were allowed to flourish because the New York Police Department declined to implement sufficient training or any legitimate mechanism for oversight or punishment of officers and agents who withheld material evidence, fabricated false evidence and witness testimony, and pursued wrongful convictions.

85. The constitutional violations described in this Complaint were also undertaken pursuant to the policy and practices of the New York Police Department in that the constitutional violations were committed with the knowledge or approval of persons with final policymaking authority for City of New York and the New York Police Department.

15

86. New York police officers who manufactured bogus criminal cases against individuals such as Plaintiffs had every reason to know that they not only enjoyed *de facto* immunity from criminal prosecution and/or Departmental discipline, but that they also stood to be rewarded for closing cases no matter the costs. In this way, this system proximately caused abuses, such as the misconduct at issue in this case.

87. The policies, practices, and customs set forth above were the moving force behind the numerous constitutional violations in this case and directly and proximately caused Plaintiffs to suffer the grievous and permanent injuries and damages set forth above.[2]

WHEREFORE, Plaintiffs ARTHUR SCOTT and EDWIN ORTIZ respectfully request that this Court enter judgment in their favor and against Defendants New York City Police Officer Oscar Sandino; City of New York; and Unknown Officers, awarding compensatory damages, punitive damages, costs, and attorneys' fees, and interest, as well as any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs Arthur Scott and Edwin Ortiz hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: June 13, 2022

RESPECTFULLY SUBMITTED:

s/ Danielle Hamilton
*One of the attorneys for Arthur Scott and Edwin Ortiz*

---

[2] Plaintiffs will amend their complaint to include state-law claims if their claims described in their notices to the State are denied.

Jon Loevy*
Danielle Hamilton
Renee Spence*
Kelly Jo Popkin
LOEVY & LOEVY
311 North Aberdeen St., 3rd floor
Chicago, Illinois 60607
Phone: (312) 243-5900
Fax: (312) 243-5902
hamilton@loevy.com


*Pro hac vice admission pending